IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:      3:08cr22/LAC
                                                       3:09cv551/LAC/EMT

MICHAEL BERGER

---

**REPORT AND RECOMMENDATION**

This matter is before the court upon a motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255, and supporting memorandum of law (docs. 839, 840).  The Government has filed a corrected response (doc. 856),[1] and Defendant has filed a reply  (doc. 873).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**BACKGROUND**

Defendant was charged in a superseding indictment with various charges related to internet distribution of child pornography (doc. 78, counts 1, 2, 3, 16, 26, 40).  Defendant was represented by appointed counsel Michelle Hendrix.  On October 2, 2008, he entered a guilty plea to Count 26

---

[1] The Government's corrected response did not include the attachments submitted with its original response, which is found at doc. 855 (*see* doc. 856 at 1 & n.1 (noting that corrected response was filed only to correct "spacing issues" and that the court could rely on the attachments submitted with doc. 855, the original response)).

of the indictment, which charged knowingly receiving child pornography in interstate and foreign commerce via the computer in violation of 18 U.S.C. § 2252A(a)(2) and 2 (doc. 289; doc. 78 at 24).

At the change of plea proceeding, the Assistant United States Attorney indicated that the change of plea hearing was scheduled "[a]fter extensive conversations with defense counsel . . . ." (doc. 855 at 83).[2]  He further stated that it was the Government's understanding that "the defense will then waive any and all defenses to the indictment, and retract any and all motions previously filed" (*id.*).  Pursuant to Defendant's plea, the Government agreed that it would not prosecute Defendant in the District of Maryland for a crime committed in that district, although the court would be permitted to consider the conduct in question at sentencing (*id.* at 84).  The court advised Defendant of his rights, including the fact that he would be giving up the right to appeal the question of his guilt or innocence because he would be admitting his guilt (*id.* at 89).

Counts 1, 2, 3, 16 and 40 were dismissed upon oral motion of the Government at sentencing, and Defendant was sentenced to a term of 180 months imprisonment,[3] followed by 15 years of supervised release (doc. 387).  He appealed, but the appeal was dismissed upon his own motion on November 12, 2009 (doc. 830).  The instant motion to vacate was filed on December 15, 2009, through counsel.  In the present motion Defendant raises a single ground for relief.  He contends that counsel was constitutionally ineffective for her failure to file a motion to suppress the evidence seized from his residence.  The Government opposes the motion.

## **LEGAL ANALYSIS**

### General Legal Standards

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is

---

[2] Page references are to the page as identified by the court's electronic docketing system.

[3] The Presentence Investigation Report ("PSR") calculated Defendant's total offense level at 35, and his criminal history category at I.  Thus, the applicable Guidelines range was 168 to 210 months.

otherwise subject to collateral attack.  28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

       The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 Fed. Appx. 290 (11th Cir. 2005).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

       Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills v. United States, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense

prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007).  "Strickland's two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea."  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (*citing* Hill v. Lockhart, 474 U.S. 52 (1985)); United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001).  In applying Strickland, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  Yordan, 909 F.2d at 477 (citing Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Dingle, 480 F.3d at 1099; Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel

did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315 (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id.

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 Fed. Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears

to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."  United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

Counsel's Failure to File a Motion to Suppress

The Supreme Court has stated, that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973).  He may, however, attack the voluntary and intelligent character of the plea by showing that the advice he received from counsel was constitutionally unsound.  *Id.*  That is precisely what Defendant now claims:  that his plea was not entered knowingly, intelligently and voluntarily because at the time he entered his plea,

he was unaware that the Government's evidence should have been suppressed, and he was unaware that it should have been suppressed because his attorney ineffectively failed to move to suppress it. He asserts that his internet account, which had been linked to child pornography, had been "compromised," and that the Government's failure to include this information in the search warrant affidavit invalidated the entire search warrant.

Generally, when counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, in order to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006). Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded. Jones v. United States, 224 F.3d 1251, 1259 (11th Cir. 2000); Huynh v. King, 95 F.3d 1052, 1058–59 (11th Cir. 1996); Thomas v. Newsome, 821 F.2d 1550, 1552 (11th Cir. 1987); see also Davidson v. United States, 213 Fed. Appx. 769, 771 (11th Cir. 2007) (defendant pleaded guilty after counsel advised him that a challenge to a search warrant affidavit that may have knowingly included false statements probably would be unsuccessful, because even the redacted affidavit would include evidence of defendant's subscription to a child pornography internet group); Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005).

When challenging the integrity of a warrant under the Fourth Amendment, a defendant must first show that the affidavit in support of the warrant contained misrepresentations or omissions that were either deliberate or made with reckless disregard for the truth. United States v. Novaton, 271 F.3d 968, 986 (11th Cir. 2001) (citing United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990)); United States v. Martin, 615 F.2d 318, 329 (5th Cir. 1980);[4] Franks v. Delaware, 438 U.S. 154, 171 (1978) (defendant must show "deliberate falsehood or reckless disregard for the truth"); Green v. Nelson, 595 F.3d 1245, 1252 (11th Cir. 2010)); Davidson, 213 Fed. Appx. at 771. Merely

---

[4] All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

negligent omissions will not undermine the affidavit, and the burden remains on Defendant to prove the false statement or omission was the result of more than negligence.  Martin, 615 F.2d at 329; *see also* Madiwale v. Savaiko, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (negligent omissions will not invalidate a warrant, and even intentional or reckless omissions will invalidate a warrant only if the omitted facts would have prevented a finding of probable cause); United States v. Burston,159 F.3d 1328, 1333 (11th Cir. 1998).  If that standard is met, the affidavit must next be examined to determine whether the result of excluding the alleged misrepresentations or including the alleged omissions would have been a lack of  probable cause for issuance of the warrant.  Novaton, 271 F.3d at 986–87; Franks, 438 U.S.  at 171–72.

In Martin, 615 F.2d at 629, there was "no evidence in the record directly illuminating the state of mind of the affiant when he omitted certain facts from the affidavit," and the same is true in this case.  Defendant baldly asserts:

> [t]he only conclusion that can be reached from the failure to include the 'compromised account' information in the affidavit is that either the Government intentionally misled the court or the Government acted with reckless disregard of the truth.   Any reasonable person would have known that this was the kind of information the judge would wish to know.

(doc. 840 at 12).  In its response, the Government denies that the affiant omitted any facts that would have negated probable cause either maliciously or with reckless abandon (doc. 856 at 12), and it frames the facts as presented by Defendant in a different light.  The Government explains that the "compromise" cited by Defendant was not quite as he suggests, and in fact was further evidence of the sophistication of the charged conspiracy (*see* doc. 855, exh. E).  Defendant has presented no proof that the omission of information related to the "compromise," if it can be construed as an omission, was more than negligent.  Absent such proof the inquiry could end here.  However, the court will assume for sake of argument that Defendant has met his burden and examine the contents of the affidavit in conjunction with the charged "omission."

The affidavit in support of the search warrant of Defendant's residence was executed by FBI Special Agent John Kohler and is fifty-one (51) pages in length (doc. 855, exh. A).  Agent Kohler is a Special Agent for the FBI, assigned to the "Innocent Images/Crimes Against Children with the Richmond, Virginia Division of the FBI" (*id.*).  By way of background, Kohler states in his affidavit

Case 3:08-cr-00022-LC-EMT   Document 899   Filed 06/12/12   Page 9 of 18

that he had received particularized training in the investigation of "computer-related crimes, Usenet, peer-to-peer computer networking, and online (i.e., internet-based) crimes against children (*id.* at ¶ 2). The affidavit purports to set forth, not each and every fact known to Agent Kohler concerning the investigation, but rather those facts necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of statutes relating to the sexual exploitation of minors would be located at the premises to be searched (*id.* at ¶ 4). It includes detailed definitions of terms related to the offense conduct and to computers and the internet, as well as a description of how computers are used with respect to child pornography (*id.* at ¶¶ 6–15). The affidavit also describes the workings of the criminal enterprise under investigation, including its use of "highly technical and advanced security measures to avoid law enforcement detection," such as the use of separate newsgroup locations for communication of text (e.g., instructions and passwords for successful download of specific child pornographic materials and for the retrieval of the materials), the swapping of file extensions which must be re-swapped in order to successfully download pictures or video files, a requirement of complete anonymity among members, and the frequent changing of member nicknames and personal PGP keys[5] (*id.* at ¶¶ 17–22).

Defendant is identified in the affidavit as a subject of the investigation and associated with certain nicknames used to communicate with other members of the child exploitation enterprise (doc. 855, exh. A, ¶ 23). On September 2, 2006, an individual using the nickname "artery-clogger," which was known to be used by Defendant, accessed one of the newsgroups used by the enterprise and posted a message which included instructions on how to access video and still child pornography images of a particular child at a different newsgroup location (*id.* at ¶¶ 24–25).[6] On September 10, 2006, an individual using the same nickname of "artery-clogger" accessed the same

---

[5] Pretty Good Privacy, or "PGP," is software for use in encryption or decryption (doc. 855, exh. A at ¶ 6u).

[6] Accessing the files required accessing a separate newsgroup, locating all files with the identified subject, and downloading, decrypting and reassembling those files (*see* doc. 855, exh. A at ¶ 25).

newsgroup and posted a message which contained instructions on how to access a different set of child pornography videos featuring another child victim (*id*. at 27–28).

On May 17, 2007, the Government served an administrative subpoena on Newscene Usenet News Service requesting subscriber information for the individual responsible for the September 10, 2006 post (doc. 855, exh. A, ¶ 29). The information it received identified Defendant Mike Berger and provided his email address, debit card information, and seventeen IP addresses[7] associated with the account, among other information (*id*. at ¶ 30). The Government subsequently subpoenaed subscriber information associated with the email address that had been provided, and Comcast responded by providing Defendant's name, address and phone number, although it also appeared that the account had not been created until after the two messages described above were posted (*id*. at ¶¶ 31, 32). The Government also performed an internet online query regarding the seventeen IP addresses and learned that the ISP was Comcast (*id*. at ¶ 33). When it requested subscriber information from Comcast about the user of the seventeen IP addresses, it was again provided with Defendant's name, address and phone number (*id*. at ¶¶ 34–35).

Through another subpoena, the Government learned that the phone number associated with Defendant's email address was for a "Joe Corbi's Wholesale," which, it subsequently learned, was or had been Defendant's employer (doc. 855, exh. A at ¶¶ 36–38).

On September 23, 2006, an individual using the nickname of "artery-clogger" accessed one of the newsgroups used by the enterprise and posted a message which included instructions on how to access video child pornography images of a child at a different newsgroup location (doc. 855, exh. A at ¶¶ 40– 41).

In August of 2007, law enforcement subpoenaed information from Newscene Usenet New Service about any internet accounts bearing Defendant's name or being paid by a particular debit card number (doc. 855, exh. A at 42). They obtained, among other things, numbers on credit/debit

---

[7] Internet Protocol ("IP") addresses are defined and explained in paragraph 6q of the affidavit as unique numeric addresses used by computers on the internet that allow internet sites to properly route traffic from the source to the destination. The assignment of IP addresses is controlled by Internet Service Providers ("ISPs"). There are two types of IP addresses: dynamic, which as the name suggests, differ each time the user accesses the ISP, and static, which function as a permanent IP address (doc. 855, exh. A at 6q).

cards that had also been used for payment and that had previously been linked or were later linked to Defendant's address (*id*. at ¶¶ 43–45, 52–54).

On July 27 and August 5, 2007, an individual using the nickname "Hanako," which had also been linked to Defendant, accessed a different newsgroup used by the enterprise and posted messages which included instructions on how to access still and video child pornography images of a child at a different newsgroup location that was also different from the one previously used (doc. 855, exh. A at ¶¶ 46, 48).  Download, decryption and reassembly based on these messages revealed still and video images of child pornography (*id*. at ¶¶ 47, 49).  On September 13, 2007, an individual using the nickname "Volsch," which had also been linked to the Defendant, posed a message on yet another newsgroup with instructions for accessing video and still images of child pornography (*id*. at ¶¶ 62–63).

One of the Visa cards linked to Defendant was used in June of 2007 to make a $125.00 purchase on eBay, via PayPal, with the purchased item shipped to Defendant's place of employment, using an IP address linked to Defendant's internet account (doc. 855, exh. A, ¶¶ 55–61).

On November 9, 2007, law enforcement requested subscriber information from Easynews Holdings for any internet accounts being paid with Defendant's credit card number, and in response received information regarding accounts, credit cards, and an IP address linked to Defendant (doc. 855, exh. A, ¶¶ 65–68).

Despite the detail provided above, Defendant contends that there was material information omitted from the affidavit, and that the omitted information undermines the probable cause determination.  Specifically, Defendant asserts that in September of 2006, the Government issued a subpoena requesting information relating to the September 2, 2006 message posted by "artery-clogger," which post is referenced in paragraph 24 of the affidavit and discussed *supra* (doc. 840, exh. B).[8]  On September 15, 2006, in response to the subpoena, Michael McMahon, a Newscene records custodian, responded via email:

> As we discussed briefly in our conversation on 9/13/06, the message cited in the subpoena was posted through an account that was compromised.  The only information I am able to confirm with certainty is the IP address from which the

---

[8] This subpoena was not mentioned in the search warrant.

message was posted, and the time at which the connection to our server was united
and terminated.

(Doc. 840 at 8 & exh. C).  Defendant asserts that the documents attached to Mr. McMahon's email
indicate that the post in question came from an IP address originating in Nurenberg, Germany (*id.*).
The Government also issued a subpoena[9] seeking information about the September 10, 2006 post
by "artery-clogger," which post is referenced in paragraph 27 of the affidavit and also discussed
*supra* (*id.* at 9 & exh. D).  Mr. McMahon responded that the message was posted using the same
account involved in the subpoena referenced immediately above, and "[a]s we discussed at that time,
the account was compromised" (*id.*, exh. E).  McMahon further indicated that with respect to the
previous subpoena, he had provided to another agent via email upon request "a list of timestamps
and IP addresses from which the compromised account had been accessed" (*id.*).  Defendant states
that the documents attached to McMahon's January 3, 2007 response indicate that the post in
question came from an IP address originating in Middletown, New Jersey.  There are no documents
attached to exhibit E, although this information is mentioned in a separate exhibit (*see* doc. 840, exh.
6 at 2).

        Defendant hired Michael L. Meacham, an "Information Technology" ("IT") expert, to review
his case and offer an opinion on what Mr. McMahon meant when he stated that Defendant's account
had been "compromised" (doc. 840, exh. F).  In a letter to Defendant's attorney dated December 10,
2009, Meacham concluded that because Defendant's account had been compromised, or "hacked,"
and hackers routinely obtain usernames and passwords and are able to post materials through the
account without the owner's knowledge, there is "no evidence to conclude that [Defendant] posted
the offensive materials" (doc. 840, exh. F at 3).  In fact, Meachum noted that discovery showed that
two of the objectionable messages mentioned in the search warrant affidavit were posted from IP
addresses originating in Nurenberg, Germany and Middletown, NJ, and that although the FBI had
been given a complete list of timestamps and IP addresses from which the compromised account had
been accessed, the list was not included in the affidavit in support of the search warrant (*id.* at 1, 2).
It does not appear that Meachum ever spoke to McMahon, however.

---

        [9] The date on the subpoena states "the 13th day of 2006" and the response is requested by
an unspecified date in January of 2007.

With its response, the Government has submitted the affidavit of Barbara Cordero, Supervisory Special Agent with the FBI who is assigned to the Innocent Images National Initiative Unit of the Cyber Division, and who assisted Agent Kohler in authoring the search warrant affidavit (doc. 855, exh. E).  Ms. Cordero acknowledges that law enforcement received information that Defendant's Newscene account had been "compromised" in September of 2006 (*id.*).  The same week, Constable Brenden Power of the Queensland Police Service, who is an expert in online investigations and was working from Cordero's FBI office on this investigation, contacted Newscene and spoke directly to Michael McMahon, the author of the email asserting Defendant's account had been "compromised" (*id.*).  Constable Power learned that McMahon had concluded that the account was   "compromised" based merely on the erratic IP addresses associated with Defendant's account and that McMahon had investigated no other possibilities (*id.*).  Mr. McMahon, Power learned, was "not even familiar with what TOR[10] was or how it operated."  After discussion, the two men agreed that TOR was being used via Defendant's account (*id.*).  Constable Power then confirmed that the IP address related to the subpoena was via TOR, and thus law enforcement learned that Defendant's account was using TOR as opposed to being "hacked" into by outside individuals (*id.*).  Ms. Cordero concludes her affidavit by stating that given that the conspirators promoted the use of TOR, it was law enforcement's reasonable belief that Defendant's account was not "hacked," but that it was using this online tool to make the communications anonymous in furtherance of the illicit activity (*id.*).

The probable cause standard does not require any showing that an officer's belief that evidence will be found in the searched premises "be correct or more likely true than false."  Texas v. Brown, 460 U.S. 730, 742 (1983) (citation and internal quotation marks omitted).  Rather, probable cause to search exists so long as the supporting affidavit contains information showing a "fair probability" that evidence of a crime would be found there.  Illinois v. Gates, 462 U.S. 213, 238

---

[10] TOR was defined in the search warrant affidavit as a network of virtual tunnels that allow users and groups to improve their privacy and security on the internet.  It is a program and network of freestanding computers that act as a three chain anonymous encrypted proxy.  Generally, a user's communication will travel through three other participating user computers before being sent to its final destination (doc. 855, exh. A at ¶ 6v).  The Government explains in its response to Defendant's motion that TOR is an acronym for "The Onion Router" (doc. 856 at 14).

(1983).  Neither certainty nor a preponderance of the evidence is required.  Gates, 462 U.S. at 246.

As the Eleventh Circuit has recently reiterated:

> A sufficient basis for probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place.  A fair probability, in turn exists when the facts and circumstances would lead a reasonably prudent person to believe that the place to be searched contains contraband or evidence of a crime.

United States v. Noriega, 676 F.3d 1252, 1261 (11th Cir. 2012) (quoting United States v. Lopez, 649 F.3d 1222, 1245 (11th Cir. 2011) (alteration, citations, and quotation marks omitted)).

Defendant did not cite any cases involving electronic evidence.  However, there are a number of cases, both published and unpublished, wherein defendants challenged the issuance of search warrants that relied upon such evidence, and courts were forced to address the particular problems unique to electronic evidence.  In United States v. Perez, 484 F.3d 735, 740 (5th Cir. 2007) the defendant challenged a search warrant that produced evidence of crimes involving child pornography.  The affidavit in that case stated that a witness had viewed child pornography that had been transmitted over an IP address assigned to the defendant.  The defendant argued that the mere association of an IP address with a physical location did not give probable cause to search the address, because if he had an unsecure wireless connection, neighbors could have used his access to make the transmissions.  Id.  The court noted that "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it *remained likely* that the source of the transmissions was inside the residence." Id. (emphasis added).  Similarly, in United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000), defendant argued that the affidavit in support of the search warrant failed to prove it was he, rather than someone else, who was using his account to traffic in child pornography.  The court noted that although an individual other than the account's registrant might be able to access an account illicitly, there was no evidence suggesting that on any given occasion, the user was not likely to be the registrant.  It concluded that "even discounting for the possibility that an individual other than [defendant] may have been using his account, there was a *fair probability* that [defendant] was the user and that evidence of the user's illegal activities would be found in his home." *Id.*; *see also* United States v. Massey, No. 4:09cr506–DJS, 2009 WL 3762322 (E.D. Mo. Nov. 10, 2009) (even if an IP address is vulnerable to hijacking by a third party,

other evidence of defendant's activities provided sufficient probable cause for a search warrant); United States v. Carter, 549 F. Supp. 2d 1257, 1268–69 (D. Nev. 2008) (even though outside computer users could gain access to the internet through a subscriber's IP address and computers can use software to "spoof" another person's assigned IP address, thus diminishing the likelihood that particular transmissions emanated from the subscriber's premises, this is insufficient to eliminate probable cause); United States v. Merz, No. 07-1992009, 2009 WL 1183771 (E.D. Pa. May 4, 2009) (warrant linking IP address to residential address sufficient to support search warrant); United States v. Latham, No. 2:06-cr-379-LDG, 2007 WL 4563459, at *1 (D. Nev. Dec. 18, 2007) ("evidence of possible alternative means by which images could be uploaded to the internet using [defendant's] assigned IP address other than by a computer located in that residence does not call into doubt whether there was a fair probability that the originating computer was located at that residence, or that evidence regarding the possession of the images would be located at that residence"); United States v. Huitt, No. CR-07-90-S-BLW, 2007 WL 2355782 (D. Idaho Aug. 17, 2007) (affidavit that did not address "spoofing" of IP addresses was otherwise accurate and sufficient to support probable cause); United States v. Hibble, No. CR 05-1410 TUC DCB, 2006 WL 2620349, at *11 (D. Ariz. Sept. 11, 2006) (defendant's suggestion that hacking, "spoofing," tampering, theft or viral infections could have been responsible for the unlawful images on his computer was insufficient to warrant a Franks hearing, but were more suitably addressed at trial). In Grant, the First Circuit also cited cases where search warrants were issued based on little more than the activities of a defendant's registered screen name. Grant, 218 F.3d at 75 n.2 (citing United States v. Tank, 200 F.3d 627, 629–30 (9th Cir. 2000); United States v. Fabiano, 169 F.3d 1299, 1302 (10th Cir. 1999); United States v. Hibbleer, 159 F.3d 233, 234 (6th Cir. 1998)). Finally, in United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc), the government obtained a warrant to search defendant's residence and personal computer for child pornography based only on information in the affidavit that defendant had subscribed to and remained a member of an internet website which charged a monthly fee, and which advertised and allowed members to view and download both legal pornography and illegal child pornography.  The issuing judge's application of a "common sense approach," to conclude that evidence of defendant's subscription to even this "mixed" website provided the necessary "fair probability" to investigate further, supported a finding

of probable cause for issuance of the search warrant.  *Id.* at 1069, 1071–72.  The court in <u>Gourde</u> referenced the "collector profile" of a child pornography aficionado, noting that this strengthens the inference and increases the fair probability that evidence of a crime will be located within the residence of an individual whose computer has logged suspicious activity.[11]  <u>Gourde</u>, 440 F. 3d at 1072 (*citing* <u>United States v. Hay</u>, 231 F.3d 630, 636 (9th Cir. 2000)).

Defendant does not dispute that there was probable cause in the warrant as written.  In turn, the court does not disagree that information about Defendant's account having been compromised, if in fact that is what happened, would have been relevant to the reviewing judge.  However, as set forth in Ms. Cordero's affidavit, it does not appear that McMahon's assessment of "compromise" was accurate.  Furthermore, even if it had been, the above-cited cases establish that the possibility that Defendant's account had been compromised would not have eliminated the "fair probability that contraband or evidence of a crime [would] be found in [Defendant's residence]," or the fact that a "reasonably prudent person" would believe that his residence "contain[ed] contraband or evidence of a crime."  *See* <u>Noriega</u>, 676 F.3d 1252.  As was poetically stated by one court:

> Law enforcement officers were not required to negate every possible explanation for child pornography having been sent from [defendant's] IP address before applying for a warrant to search the apparent source-[defendant's] computer.  When federal agents hear hoof beats, they are not required to eliminate the possibility of zebras before requesting a warrant to look for horses.

<u>United States v. Courtney</u>, No. 4:07cr00261/JLH, 2008 WL 4998997, at *4 (E.D. Ark. Nov. 20, 2008).

Therefore, although Defendant contends that counsel was constitutionally ineffective for failing to file a motion to suppress, based on the foregoing analysis, this court does not agree.  Counsel is not ineffective for failing to preserve or argue a meritless claim.  <u>Freeman v. Attorney General, Florida</u>, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); <u>Chandler v. Moore</u>, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect

---

[11]The affidavit in this case includes two pages describing "characteristics" of child pornography collectors (doc. 855, exh. A at ¶ 16).

of potential sentence); <u>Meeks v. Moore</u>, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

Similarly, to the extent Defendant contends that his plea was involuntary, based on the faulty premise that the Government's evidence "should have been suppressed," the contention is without merit, and his motion should be denied.

## CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (doc. 839)  be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 12<u>th</u> day of June 2012.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**